UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| MANDI FAYE ISAACS, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:22-cv-00050-GFVT |
| ) | |
| v. ) | |
| ) | **MAMORANDUM OPINION** |
| BRINKER INTERNATIONAL PAYROLL ) | **&** |
| CORP., ) | **ORDER** |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Brinker International Payroll Company's Motion to Dismiss, or in the Alternative, to Compel Arbitration and Stay Proceedings. [R. 10.] Plaintiff Mandi Isaacs brings state employment and tort claims against her former employer, Brinker International Payroll. [R. 1-1.] However, Brinker alleges that it and Ms. Isaacs agreed to resolve any dispute by arbitration. [R. 10-4.] Brinker now seeks to compel arbitration. [R. 10.] But by specifically and unequivocally denying that she knew about any arbitration agreement, Ms. Isaacs put the making of the agreement in issue. Accordingly, the Court will deny without prejudice Brinker's motion and proceed summarily to trial on whether the parties agreed to arbitrate.

**I**

Ms. Isaacs worked at a Chili's Grill & Bar in Frankfort, Kentucky. [R. 1-1 at 2.] Brinker purchased the restaurant and continued its operation, including Ms. Isaacs's employment. [R. 10-1 at 2.] Before an employee begins working for Brinker, even when acquired, the employee must complete an onboarding process. *Id.* Brinker uses an online document software for

prospective employees to complete and sign employment documents. *Id.* If an employee was acquired, credentials for the software consist of the person's name, social security number, date of birth, and the state of employment. *Id.* The employee may log into the software and electronically sign documents with these credentials. *Id.* at 3.

Brinker required employees to complete an arbitration agreement and an acknowledgement electronically. [R. 10-4; R. 10-5.] The arbitration agreement provided that the parties agree to submit employment-related disputes to arbitration. [R. 10-4.] This was electronically signed with Mandi Isaacs's name. *Id.* The acknowledgement agreed that the employee received a copy of Brinker's policies and procedures manual, which includes a copy of the arbitration agreement. [R. 10-5.] This too was electronically signed with Mandi Isaacs's name. *Id.* Brinker contends that its onboarding process also includes a mandatory in-person orientation, conducted by the assistant manager. [R. 16-1 at 1.] It alleges that the orientation involves reviewing and distributing Brinker's policies and procedures manual as well as completing additional paperwork acknowledging that the employee completed onboarding, received Brinker's policies and procedures manual, and agreed to other Brinker policies. *Id.* at 2. Ms. Isaacs alleges that she never accessed the online document software, never heard about the arbitration agreement, and Brinker never conducted an in-person orientation. [R. 13-1; R. 21-1.]

In 2021, Ms. Isaacs's employment with Brinker came to an end. [R. 10-1 at 2; R. 13 at 1.] She then sued Brinker, alleging state employment and tort claims. [R. 1-1.] Brinker responded by moving to dismiss the suit and to compel arbitration. [R. 10.] Ms. Isaacs argues that she never agreed to arbitrate and seeks a summary trial on the issue. [R. 13.]

## II

### A

Under the Federal Arbitration Act, parties to a written agreement to arbitrate their dispute can petition the district court to compel arbitration. 9 U.S.C. § 4. Arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (quoting 9 U.S.C. § 2). Yet before compelling an unwilling party to arbitrate, the court must determine whether a valid agreement to arbitrate exists. *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). If the making of an arbitration agreement is "in issue," courts must "proceed summarily to the trial" of that issue. 9 U.S.C. § 4.

Though styled as a motion to dismiss, "courts have held that Rule 56's standards govern whether a court should hold a trial under § 4 when a party alleges that no contract exists." *Boykin v. Family Dollar Stores of Mich., LLC*, 3 F.4th 832, 838 (6th Cir. 2021) (collecting cases). Accordingly, the question is whether a reasonable factfinder could conclude that no valid agreement to arbitrate exists. *See Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). And the Court views all facts and draws all inferences in the light most favorable to the party opposing arbitration. *See id.* ("[T]he party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate.").

Courts apply state contract law in determining whether a valid agreement to arbitrate exists. *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392-93 (6th Cir. 2003). In Kentucky, the party seeking to enforce an agreement must make a prima facie showing that the agreement exists. *Davis v. Glob. Client Sols., LLC*, 765 F. Supp. 2d 937, 940 (W.D. Ky. 2011) (quoting *Louisville Peterbilt, Inc. v. Cox*, 132 S.W.3d 850, 857 (Ky. 2004) (internal quotation marks

omitted)). A party meets this burden "by providing copies of a written and signed agreement to arbitrate." *MHC Kenworth-Knoxville/Nashville v. M & H Trucking, LLC*, 392 S.W.3d 903, 906 (Ky. 2013). Once a party provides the agreement "showing the existence of a right to arbitrate, a presumption of its validity accrues" and the burden shifts to the party seeking to avoid the agreement to rebut the presumption. *Weis Builders, Inc. v. Complete Contracting, Inc.*, 247 S.W.3d 542, 545 (Ky. Ct. App. 2008).

<b>B</b>

Brinker submitted the alleged arbitration agreement, which bears Mandi Isaacs's electronic signature. [R. 10-4.] Brinker argues that the Court should compel arbitration under the agreement. [R. 10-1 at 7.] In the alternative, Brinker argues that Ms. Isaacs agreed to arbitrate her claims by continuing to work for Brinker while knowing arbitration was a condition of employment. *Id.* at 18. Ms. Isaacs contends that she never saw or signed the arbitration agreement. [R. 13 at 2.]

To compel arbitration, Brinker has the initial duty to present evidence of a valid arbitration agreement. *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 417 (6th Cir. 2011). It meets this burden. Brinker provides a copy of the completed arbitration agreement. [*See* R. 10-3.] Brinker also introduces a declaration by Brandon Loeffler, a senior manager of people systems, who stated that the company uses online software for employee onboarding. [R. 10-2 at 2.] Prospective employees like Ms. Isaacs receive credentials consisting of their name, social security number, date of birth, and state of employment. *Id.* The employee then uses the credentials in the software to complete required forms. *Id.* Mr. Loeffler stated that Ms. Isaacs used this process to sign the agreement to arbitrate and the acknowledgement that she received a copy of the policies manual. *Id.* at 5-6.

In addition, Brinker provides a declaration by Etta Cox, an assistant manager who conducted orientation and onboarding for new employees. [R. 16-1 at 1.] Ms. Cox states that new employees must complete orientation and onboarding, which includes "a standard spiel" during an in-person orientation. *Id.* at 1-2. She says that the spiel includes reviewing Brinker's policies manual and giving employees a hard copy of the manual. *Id.* at 2. Brinker submits three documents with Ms. Cox's declaration. First, a document that Ms. Cox signed to affirm that "online on-boarding is complete." [R. 16-2.] This form included "Benefits" and "Tip Acknowledgement" sections under which Ms. Isaacs signed. *Id.* Second, a form written in Spanish included Ms. Isaacs's name, employee number, and social security number. [R. 16-3 at 1.] An English version of the form is entitled "Receipt of Brinker's Policies & Procedures Manual" and acknowledges that the person received Brinker's the agreement to arbitrate. *Id.* at 2. Third, a page taken from Brinker's policies manual. [R. 16-4.] This form discusses health condition reporting and forms, team member conduct, and Brinker's work schedule policy. *Id.*

In response, Ms. Isaacs must present specific facts "that would allow a rational trier of fact to find that [she] did not acknowledge the agreement or learn about the arbitration condition of employment in other ways." *Boykin*, 3 F.4th at 839. Ms. Isaacs attempts to do so with a sworn declaration. [R. 13-1.] Courts distinguish declarations that state the party does not recall signing an arbitration agreement from those that state the party affirmatively denies ever signing one. *Compare Fania v. Kin Ins., Inc.*, No. 2:22-12354, 2023 U.S. Dist. LEXIS 89015 (E.D. Mich. May 22, 2023), *with Tinder v. Pinkerton Sec.*, 305 F.3d 728, 730 (7th Cir. 2002). And while "memory lapses do not create factual disputes that are genuine," an "unequivocal denial that takes the form of admissible evidence can create a genuine dispute of fact." *Boykin*, 3 F.4th at 840 (internal quotation marks omitted); *see also Mazera v. Varsity Ford Mgmt. Servs., LLC*,

5

565 F.3d 997, 1001 (6th Cir. 2009) (quoting the Third Circuit's position that "an unequivocal denial that the agreement had been made, accompanied by supporting affidavits in most cases should be sufficient to require a jury determination on whether there had in fact been a meeting of the minds about arbitration.") (alterations omitted).

For example, in *Boykin*, the defendant seeking to compel arbitration provided testimony that the company required employees to take an arbitration session and agree to an arbitration agreement. *Boykin*, 3 F.4th at 839. The defendant also attached records suggesting that the plaintiff completed the arbitration session. *Id.* On the other hand, the plaintiff "flatly denied accepting an arbitration contract" subject "to the penalties of perjury." *Id.* at 840. The plaintiff also denied receiving any information about arbitration. *Id.* The Sixth Circuit held that "this evidence creates a factual dispute over whether [the plaintiff] authorized the arbitration contract or learned of [the company's] arbitration policy in other ways." *Id.*; s*ee also Fania*, 2023 U.S. Dist. LEXIS 89015, at *9 (holding that the arbitration agreement was in issue where the plaintiff provided "a sworn denial that the party never signed an arbitration agreement or received arbitration materials").

Here, Ms. Isaacs provides a vehement denial that she ever received or signed the arbitration agreement. In a declaration, subject to the penalties of perjury, Ms. Isaacs states that she completed all employment documents in physical form. [R. 13-1.] She states that at "no point was I ever aware that Brinker had an arbitration policy," that she has never used Brinker's online document software, and that she "categorically den[ies]" ever seeing or signing the arbitration agreement and policies manual. *Id.* at 1-2. In fact, Ms. Isaacs claims the electronic signatures bearing her name are forgeries. *Id.* Regarding Ms. Cox's statements, Ms. Isaacs states that "Ms. Cox never conducted an orientation" or provided a copy of Brinker's policies

manual. [R. 21-1 at 1.] Further, she states that she never received the English version of the "Receipt of Brinker's Policies & Procedures Manual" form. *Id.* She alleges that, though she has never seen the Spanish version either, Ms. Cox told her to write her information "on the left margin of a piece of paper that was concealed by a folder." *Id.* This would align with her name on the margin of the Spanish version of the second document. And Ms. Isaacs provides that "Ms. Cox presented whatever document I signed as part of updating [her] emergency contact information" and that she "was not allowed to open the folder and look at the rest of the document." *Id.*

Brinker provided nearly identical evidence of an arbitration agreement—including declarations from Mr. Loeffler and the store manager—to the Second Circuit. *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 48 (2d Cir. 2022). But "in specific and exacting terms, under the penalty of perjury, [the plaintiff] categorically denied ever completing any electronic paperwork . . . receiving or signing any documents showing receipt of Brinker's arbitration policies," or having any knowledge about Brinker's online document software. *Id.* at 52. The Second Circuit held that "this evidence makes clear that Barrows has created a triable issue of fact as to the validity of the signature on her" arbitration agreement. *Id.* at 53. Considering similar evidence of an arbitration agreement, Brinker's same electronic document software, and a similar declaration categorically denying ever receiving or signing the arbitration agreement, Ms. Isaacs also creates a triable issue of fact.

Brinker argues that Ms. Isaacs's declaration does not create an issue of fact because her story "is blatantly contradicted by the record, so that no reasonable jury could believe it." [R. 16 at 1-2 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007).] But this is not a case where the plaintiff's declaration is "blatantly and demonstrably false." *Davis v. Gallagher*, 951 F.3d 743,

7

750 (6th Cir. 2020).  Although Brinker asserts that Ms. Isaacs could not "complete the onboarding process without inputting her unique username and password," it admits that these credentials require standard employee information that could be found on Ms. Isaacs's I-9 employment form.  [10-1 at 15; R. 13 at 3-4;] *Barrows*, 36 F.4th at 52.  Brinker also contends the three hand-signed documents provided by Ms. Cox contradict Ms. Isaacs's declaration.  [R. 16 at 4-9.]  However, these similarly fail to demonstrate that Ms. Isaacs's declaration is blatantly false.

The first document, including "Benefits" and "Tip Acknowledgement" sections under which Ms. Isaacs signed, does not include any information about Brinker's arbitration agreement.  [R. 16-2.]  The parties agree that the second document, which Brinker provides in Spanish and English, does acknowledge receipt of the agreement to arbitrate.  [R. 16-3.]  Ms. Isaacs is not excused from understanding the form's contents because she signed only the Spanish version.  *See Material Handling Sys. v. Cabrera*, 572 F. Supp. 3d 375, 390 (W.D. Ky. 2021).  But a party may not be bound by a provision if she was "misled as to the nature of the writing" that she signed or if her "signature has been obtained by fraud." *Hathaway v. Eckerle*, 336 S.W.3d 83, 89-90 (Ky. 2011).  Here, Ms. Isaacs's declaration alleges that Ms. Cox concealed the second document with a folder and represented it "as a part of updating [her] emergency contact information." [R. 21-1 at 2.]  Lastly, the third document also does not include any information about an arbitration agreement, referring only to Brinker's health, team member conduct, and work schedule policies.  [*See* R. 16-4.]

Brinker also argues that Ms. Isaacs accepted the arbitration contract under Kentucky law by continuing to work when the company made acceptance of the arbitration agreement a condition of continued employment.  [R. 10-1 at 18.]  In each of these cases where the doctrine applies, however, "undisputed evidence showed that the employee had learned that accepting

8

arbitration was a condition of the employee's continued employment." *Boykin*, 3 F.4th at 844 (citations omitted).  As discussed above, Ms. Isaacs unequivocally and categorically denies receiving any information about Brinker's arbitration policy.  [*See* R. 13-1; R. 21-1.]  Though Ms. Isaacs admits that she may have signed the Spanish version of the acknowledgement of policies, Ms. Isaacs alleges that Ms. Cox concealed the document with a folder and misled her as to the nature of the document.  [R. 21-1;] *see Hathaway*, 336 S.W.3d at 89-90.  Therefore, no undisputed evidence shows that Ms. Isaacs had learned about the arbitration policy.

In the end, Brinker contends that "Plaintiff's self-serving Declaration, standing alone, does not create an issue of fact."  [R. 16 at 2.]  It suggests that the Court may not even consider the declaration because it is "self-serving."  *Id.*  Yet as the Sixth Circuit eloquently put it: "Why should that matter?"  *Boykin*, 3 F.4th at 839.  Should the Court consider Ms. Isaacs's declaration only if it serves Brinker?  No.  Rather, the "self-serving" label "does nothing to undermine the other side's evidence under Rule 56."  *Id.*  Though perhaps not as persuasive as other evidence, "self-serving statements can create a genuine dispute of material fact to be resolved at trial." *Davis v. Gallagher*, 951 F.3d 743, 750 (6th Cir. 2020).  Here, Ms. Isaacs's categorical denial that she received any information about the arbitration policy or signed the agreement creates an issue of fact, putting the making of the arbitration agreement "in issue."  9 U.S.C. § 4.

### III

The FAA requires the Court to proceed summarily to trial of the disputed fact.  9 U.S.C. § 4.  The parties may not address other issues, "including merits issues, before the court resolves these formation questions" and the motion to compel.  *Boykin*, 3 F.4th at 844.  In the meantime, the Sixth Circuit provides that courts should hold the motion to compel in abeyance pending a trial on the issue of arbitrability.  *Id.* (citing *Jin v. Parsons Corp.*, 966 F.3d 821, 826-27 (D.C.

9

Cir. 2020)). The case it cited explains that the motion to compel should be held in abeyance so that it stays pending "until arbitrability is decided," and once "the final decision is reached, that decision is appealable." *Jin*, 966 F.3d at 828. However, the Court will deny without prejudice Brinker's motion with the expectation that Brinker will raise it again after the limited discovery period but before the summary trial. This way, the motion will be pending before trial and Brinker may update it with new information. The denial without prejudice will not prejudice either party's rights, and Brinker may still appeal following its resolution. Other district courts in the Sixth Circuit also take this approach. *See, e.g.*, *Romano v. Blue Cross Blue Shield of Mich.*, No. 22-12901, 2023 U.S. Dist. LEXIS 76681, at *7 (E.D. Mich. May 2, 2023). Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant Brinker International Payroll Company's Motion to Dismiss, or in the Alternative, to Compel Arbitration and Stay Proceedings [**R. 10**] is **DENIED WITHOUT PREJUDICE** and

2. Counsel for the parties shall conduct a meeting of parties to develop a proposed discovery plan. No later than **thirty (30) days** from the date of entry and service of this order, counsel for the parties shall file a written joint report outlining the proposed discovery plan. This report shall include the following information:

    a. the parties' views on whether the issue should be tried before the Court or a jury;

    b. the length of time counsel reasonably believe will be necessary to complete all pretrial discovery;

    c. a proposed deadline for the submission of pretrial briefing;

    d. the probable length of trial;

  e. the dates that are mutually convenient for counsel to assign this case for trial and final pretrial conference; and

  f. any other scheduling issues the parties deem pertinent.

This 15th day of June, 2023.

                Gregory F. Van Tatenhove
                United States District Judge